IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| STATE FARM FIRE AND, CASUALTY COMPANY | )<br>)<br>) |
| *Plaintiff,* | )<br>) |
| v. | )   Case No. 2:22-cv-02417-HLT<br>) |
| JAMES CRAIG NICHOLS and A.R., | )<br>)<br>) |
| *Defendants.* | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant A.R.'s Motion to Stay Proceedings Pending Outcome of Underlying Action (ECF No. 41). Defendant A.R. asks the Court for an order staying the proceedings of this action with respect to questions of indemnity because there is a state court proceeding in the County Court at Law No. 2, Dallas County, Texas, that will resolve factual disputes necessary to determine coverage. Plaintiff argues the Court should deny the stay because the requested declaration in this case would settle the controversy between Plaintiff and Defendant Nichols and would serve a useful purpose in clarifying legal relations between those parties with respect to State Farm's duties under the insurance policies. As set forth below, the Court grants Defendant A.R.'s motion.

**I.   Factual and Procedural Background**

On February 14, 2022, Defendant A.R. filed an action against Defendant Nichols in Texas state court alleging seven counts: (I) assault-infliction of bodily injury; (II) assault-offensive physical contact; (III) false imprisonment; (IV) negligent activity; (V) negligent undertaking; (VI)

1

gross negligence; and (VII) invasion of privacy. On October 13, 2022, Defendant Nichols' insurance carrier, Plaintiff State Farm, filed this action for Declaratory Judgment to determine their legal obligations to Defendant Nichols in Defendant A.R.'s Texas state court case against him.

Plaintiff issued a Homeowners Policy of insurance, Policy Number 16-CG-5228-6 for the Policy Period of October 22, 2019, through October 22, 2020. The Homeowners Policy provides liability coverage in the amount of $100,000.00 subject to the policy's terms and conditions. The Homeowners Policy contained the following relevant provisions:

### SECTION II – LIABILITY COVERAGES

### COVERAGE L – PERSONAL LIABILITY

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, **we** will:

1. pay up to **our** limit of liability for the damages for which the **insured** is legally liable. **We** will not pay for criminal restitution; and

2. provide a defense at **our** expense by counsel of **our** choice. **We** may make any investigation and settle any claim or suit that **we** decide is appropriate. **Our** obligation to defend any suit ends when the amount **we** pay for damages, to effect settlement or satisfy a judgment resulting from the **occurrence**, equals **our** limit of liability. **We** will not provide a defense to any insured for criminal prosecution or proceedings.

\*\*\*

### DEFINITIONS

**We** define the following words and phrases for use throughout this policy. These definitions apply to the singular, plural, and possessive forms of these words and phrases. Defined words and phrases are printed in bold italics.
\*\*\*
2. "**bodily injury**" means physical injury, sickness, or disease to a person. This includes required care, loss of services, and death therefrom.

    **Bodily injury** does not include:
        a. Any of the following which are communicable: disease, bacteria, parasite, virus, or other organism, any of which are transmitted by any **insured** to any other person;
        \*\*\*

      b.      The actual or alleged exposure to any such disease, bacteria, parasite, virus, or other organism by any **insured** to any other person; or

      c.      Emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person.

13.      "occurrence", when used in Section II of this policy, means an accident, including accidental exposure to conditions, which first results in:

      a.      **bodily injury**; or

      b.      **property damage**;

during the policy period. All **bodily injury** and **property damage** resulting from one accident, series of related accidents, or from continuous or repeated exposure to the same general conditions is considered to be one **occurrence**.

14.      "**property damage**" means physical damage to or destruction of tangible property, including loss of use of this property. Theft or tangible property, including loss of use of this property. Theft or conversion of property by any **insured** is not **property damage**.

                               \*\*\*

Section II – Exclusions

1.      Coverage L and Coverage M do not apply to:

      a.      bodily injury or property damage that:

           (1)      was a result of a:

                 (a)      willful and malicious; or

                 (b)      criminal;

                Act or omission of the **insured**;

           (2)      was intended by the **insured**; or

           (3)      would have been expected by the insured based on a reasonable person standard.

However, exclusions a.(2) and a.(3) above do not apply to **bodily injury** or **property damage** resulting from the use of reasonable force to protect persons or property.

Exclusions a.(1), a.(2), and a.(3) above apply to all **bodily injury** or **property damage** even if the:

(1)      **bodily injury** or **property damage** was sustained by a different person, entity or property than was expected or intended;

(2)      **bodily injury** or **property damage** was of a different kind, quality, or degree than was expected or intend;

(3)      **insured** lacked the mental capacity to control his or her conduct

(4)      **insured** was not charged with or convicted of a criminal act or omission; or

(5)      **insured** was impaired by drugs or alcohol;

3

\*\*\*

  n. bodily injury or property damage arising out of any actual, alleged, or threatened:

    (1) sexual harassment, sexual molestation, or sexual misconduct;
    (2) physical or mental abuse; or
    (3) corporal punishment;

  by the **insured**.[1]

State Farm issued a Personal Liability Umbrella Policy ("PLUP"), Policy Number 16-BY-E559-9 for the Policy Period of March 1, 2019, through March 1, 2020. The PLUP provides liability coverage in the amount of $1,000,000.00 subject to the policy's terms and conditions. The PLUP contains the following relevant provisions:

## DEFINITIONS

We define the words and phrases listed below. Defined words and phrases are printed in bold text, and apply throughout the policy. These definitions apply to the singular, plural, and possessive forms of these words and phrases.

\*\*\*

2.  "**bodily injury**" means physical injury, sickness or disease to a person, including death resulting therefrom.
   Bodily Injury does not include:
   a. any of the following which are communicable: disease, bacteria, parasite, virus, or other organism, any of which are transmitted by any **insured** to any other person;
   b. the exposure to any such disease, bacteria, parasite, virus, or other organism by any insured to any other person;
   c. emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury or any resulting physical injury unless it arises out of actual physical injury to some person;
   d. personal injury.

\*\*\*

7.  "**loss**" means:
   a. an accident, including accidental exposure to conditions, which first results in **bodily injury** or **property damage** during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one **loss**; or
   b. the commission of an offense which results in **personal injury** during the policy period. A series of similar or related offenses is considered to be one **loss**.

\*\*\*

---

[1] ECF No. 1.

> 15. "**you**" and "**your**" mean the person or person shown as "Named Insured" on the declarations page. If a named insured shown on the declarations page is a human being then you and your includes the spouse of the first person listed as a name insured of the spouse resides primarily with that named insured.
>
> ***
> **COVERAGES**
>
> **Coverage L – Personal Liability**
> If a claim is made or suit is brought against an **insured** for damages because of a **loss** for which the **insured** is legally liable and to which this policy applies, **we** will pay on behalf of the **insured**, the damages that exceed the **retained limit**. The most we will pay for such **loss** is the Coverage L Limit of Liability, as shown on the declarations page, regardless of the number of **insureds** who may be liable, claims made, or persons injured.
>
> ***
> **EXCLUSIONS**
> There is no coverage under this policy for any:
> ***
>
> 3. **loss** arising out of alleged or actual:
>    a. sexual harassment;
>    b. sexual molestation; or
>    c. discrimination prohibited by law
>    by the **insured**;
>
> ***
>
> 14. bodily injury or property damage which is:
>     a. either expected or intended by the insured; or
>     b. the result of any willful and malicious act of the insured.[2]

On September 27, 2023, Plaintiff filed a Motion for Summary Judgment in this case in which it argued there is no coverage for the underlying claims in the Texas state court case. Specifically, Plaintiff argues there is no coverage under the Homeowners Policy because Defendant A.R. does not allege any "bodily injury" caused by an "occurrence"; Defendant A.R.'s claims are excluded from coverage because any alleged injury was intended, reasonably expected, or the result of willful and malicious conduct; and all the claims are excluded from coverage under the Homeowners Policy because they arise out of an alleged or actual sexual assault by the insured.

---

[2] *Id.*

Further, Plaintiff argues there is no coverage under the PLUP because Defendant A.R. does not allege any "bodily injury" caused by a "loss"; Defendant A.R.'s claims are excluded from coverage because any "bodily injury" was intended, reasonably expected, or the result of willful and malicious conduct; Defendant A.R.'s claims do not meet the definition of "personal injury" under the PLUP; any allegations of "personal injury" are excluded because Defendant Nichols allegedly acted with specific intent to cause harm; and all of Defendant A.R.'s claims are excluded from coverage under the PLUP because they arise out of an alleged or actual sexual assault by the insured.

On November 2, 2023, Defendant A.R. filed a Motion to Stay this case pending the outcome of the underlying state court case, arguing that a ruling by this Court on Plaintiff's motion for summary judgment would improperly encroach upon Texas' jurisdiction over the underlying claims.

## II. Legal Standard

"The Declaratory Judgment Act authorizes federal courts to declare the legal rights and obligations of adversaries, but does not impose a duty to do so. . . . Declaratory judgment actions are particularly appropriate for situations in which insurance companies seek a declaration of their liability."[3] "But a federal court should not entertain a declaratory judgment action over which it has jurisdiction if the same fact-dependent issues are likely to be decided in another pending proceeding."[4]

---

[3] *Nationwide Affinity Ins. Co. of Am. v. Kalb*, No. 22-1103-DDC-KGG, 2022 WL 17735542, at *4 (D. Kan. Dec. 16, 2022) (internal citations and quotation marks omitted).

[4] *Id.* (citing *St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1170 (10th Cir. 1995)).

6

The Tenth Circuit has instructed district courts to consider the following *Mhoon* factors when determining whether to exercise jurisdiction over a declaratory judgment action: (1) whether a declaratory action would settle the controversy; (2) whether it would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata"; (4) whether use of a declaratory action would increase friction between federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.[5] The fourth factor is the "most significant in cases involving a determination of the same key factual issues."[6]

## III.   Analysis

### A.   Whether a Declaratory Action Would Settle the Controversy

The first *Mhoon* factor weighs in favor of this Court exercising jurisdiction over this action and denying the motion to stay. Both parties agree this declaratory judgment action will determine whether coverage exists under the facts of this case, and the underlying action will not decide the policy coverage issues. Because this action seeks a declaration regarding whether Plaintiff has a duty to defend or indemnify Defendant Nichols with respect to any judgment on the underlying claims, the first factor weighs slightly in favor of exercising jurisdiction.[7]

---

[5] *State Farm Fire & Casualty Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994) (citing *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1063 (6th Cir. 1987)).

[6] *Kalb*, 2022 WL 17735542, at *4 (internal citations and quotation marks omitted).

[7] *See id.* at *5 ("Notwithstanding the parties' arguments whether coverage exists under the current facts, it's undisputed that the Underlying Action won't decide the coverage issues. Thus, the first *Mhoon* factor slightly favors exercising jurisdiction because this declaratory judgment action will settle the controversy whether plaintiff's Insurance Policy obligates plaintiff to defend and indemnify [the insured] in the Underlying Action.").

### B. Whether a Declaratory Action Would Serve a Useful Purpose in Clarifying the Legal Relations at Issue

The second *Mhoon* factor also weighs in favor of exercising jurisdiction over this action and denying the motion to stay. Similar to the first factor, both parties agree this declaratory action would clarify the legal relations between Plaintiff State Farm and Defendant Nichols. "Courts have recognized that because an insurer has a duty to defend, as well as a duty to conduct settlement negotiations and to pay any settlement amount or judgment entered against its insured, a declaratory judgment action is appropriate to clarify legal relationship prior to final adjudication of an underlying action."[8] Because this declaratory action would resolve the uncertainty surrounding Plaintiff's obligations to defend and/or indemnify Defendant Nichols, this factor also weighs in favor of exercising jurisdiction over this action.

### C. Whether the Declaratory Judgment Action is Being Used Merely for the Purpose of "Procedural Fencing" or "to Provide an Arena for a Race to Res Judicata"

The third *Mhoon* factor is neutral. When both parties agree there is no basis to find the parties are forum shopping, the factor is neutral.[9] Both Defendant A.R. and Plaintiff agree the requested declaratory remedy is not being used for "procedural fencing" or "to provide an arena for a race to *res judicata*," thus, the factor is neutral.

### D. Whether the Use of a Declaratory Action Would Increase Friction Between Federal and State Courts and Improperly Encroach Upon State Jurisdiction

The fourth *Mhoon* factor, essentially the only factor at issue in this case, weighs against exercising jurisdiction over this action and granting the motion to stay. Defendant A.R. argues this Court should follow *Kalb* and grant the motion to stay because exercising jurisdiction over this

---

[8] *Allstate Prop. & Cas. Ins. Co. v. Salazar-Castro*, No. 08-2110-CM, 2009 WL 997157, at *1 (D. Kan. Apr. 14, 2009).

[9] *See Kalb*, 2022 WL 17735542, at *5; *Allstate Prop. & Cas. Ins. Co.*, 2009 WL 997157, at *2.

declaratory action will cause friction between federal and state courts given that there are overlapping fact issues between this action and the underlying action about whether Defendant Nichols acted negligently or intentionally and willfully. Plaintiff argues *Kalb* is distinguishable and exercising jurisdiction over this declaratory action will not cause friction because this Court does not have to decide whether Defendant Nichols was negligent to determine coverage.

In *Kalb*, this court declined to exercise jurisdiction solely based on the fourth *Mhoon* factor.[10] The underlying claims against the insured in *Kalb* were for negligence and battery.[11] The insurer argued the incident in the underlying state court case did not constitute an "occurrence" under the insurance policy and the exclusion under the insurance policy for "expected or intended injury" applied to preclude coverage for the insured's injuries.[12] While the underlying action would not have decided whether the insurance policy obligated the insurer to defend and indemnify the insured, the court found the underlying action would resolve the issue of the insured's intent which would impact the court's decision regarding whether the exclusion applied and therefore whether the insurer had a duty to defend and indemnify the insured.[13] The court found this fourth factor strongly favored declining to exercise jurisdiction and stayed the case because the insured's intent in the underlying claims overlapped with some of the questions in the declaratory judgment action, which would cause friction between the federal court and the state court involved in the underlying claims.[14]

---

[10] *See Kalb*, 2022 WL 17735542, at *6.

[11] *Id*. at *1.

[12] *Id*. at *3.

[13] *Id*. at *5.

[14] *Id*. at *6.

The Court finds *Kalb* is highly analogous to this case and must guide our decision here. Like in *Kalb*, this Court finds exercising jurisdiction over this declaratory action would likely cause friction between this Federal Court and the Texas State Court presiding over the underlying claims. Plaintiff argues *Kalb* is distinguishable because whether Defendant Nichols' conduct was negligent or intentional is not the only basis for denying coverage. However, whether Defendant Nichols acted with intent overlaps with each of Plaintiff's arguments for granting summary judgment in this case.

In Plaintiff's motion for summary judgment, it argues Defendant A.R.'s claims are excluded because she does not allege a "bodily injury" caused by an "occurrence" or a "loss" as required under the Homeowners and PLUP policies. Specifically, Plaintiff argues Defendant A.R. does not allege any claims "that Defendant Nichols acted in an undesigned manner."[15] Rather, Defendant Nichols' actions were intentional. Thus, Plaintiff's argument as to this exclusion overlaps with the State Court's determination of intent.

Plaintiff argues all of Defendant A.R.'s claims are excluded under the Homeowners and PLUP policies because they arose out of the allegations of sexual harassment, molestation, and misconduct. Defendant A.R. argues the alleged negligent conduct described under Counts IV, V, and VI for negligent activity, negligent undertaking, and gross negligence occurred earlier in the evening and could not "arise out" of the allegations of sexual harassment, molestation, and misconduct. To determine whether the alleged preceding negligent acts by Defendant Nichols were part of his overall plan to sexually assault Defendant A.R. and therefore "arose out of" the alleged sexual harassment, molestation, and misconduct, this Court must determine whether and at what

---

[15] ECF No. 33 at 12. *See also id*. at 18 ("Like the definition of 'occurrence' under the Homeowners Policy, 'loss' is defined as an 'accident.' As such, the same analysis applies.").

point Defendant Nichols allegedly developed his intent to sexually assault Defendant A.R. Thus, these arguments also require a determination of Defendant Nichols' intent and overlap with the Texas State Court's determination of intent.

The remainder of Plaintiff's arguments in favor of granting summary judgment specifically argue Defendant A.R.'s claims are excluded under both policies because Defendant Nichols acted with intent. The question of Defendant Nichols' intent in the underlying case is inseparable from Plaintiff's arguments in this Court for exercising jurisdiction and denying the motion to stay. "A federal court generally should not entertain a declaratory judgment action over which it has jurisdiction if the same fact-dependent issues are likely to be decided in another pending proceeding."[16] Thus, the Court finds, like in *Kalb*, that deciding the declaratory judgment action in this case would likely cause friction between this court and the Texas State Court and, therefore, this Court should not exercise jurisdiction over the declaratory judgment action at this time.

E.     *Whether There is an Alternative Remedy Which is Better or More Effective*

The fifth *Mhoon* factor is neutral. Here, there is not an alternative remedy for deciding Plaintiff's declaratory action for the parties' insurance coverage dispute. As stated above, "Declaratory judgment actions are particularly appropriate for situations in which insurance companies seek a declaration of their liability."[17] This court has found that when there is no alternative remedy to deciding insurance coverage disputes, but the underling action may resolve critical and/or overlapping factual issues, the factor is neutral.[18] Therefore, the Court finds this factor is neutral.

---

[16] *Kunkel v. Cont'l Cas. Co.*, 866 F.2d 1269, 1276 (10th Cir. 1989).

[17] *Kalb*, 2022 WL 17735542, at *4.

[18] *See id.* at *6; *Allstate Prop.*, 2009 WL 997157, at *2; *Nat'l Cas. Co.*, 2015 WL 265519, at *3.

In conclusion, although the Court finds factor four to be the only factor weighing in favor of declining to exercise jurisdiction and granting the stay, like in *Kalb,* the Court finds this factor to be "the most significant."[19] Because this Court's ruling depends on the underlying factual issues, the Court will stay this lawsuit until the fact-dependent issues of intent are decided in the underlying case.

**IT IS THEREFORE ORDERED** that Defendant A.R.'s Motion to Stay Proceedings Pending Outcome of Underlying Action (ECF No. 41) is GRANTED.

**IT IS FURTHER ORDERED THAT** this action is stayed pending the County Court at Law No. 2, Dallas County, Texas's resolution of the lawsuit under cause number CC-22-00739-B, filed by Defendant A.R. against Defendant Nichols.

IT IS SO ORDERED.

Dated this 26th day of February, 2024 at Kansas City, Kansas.

/s/ Teresa J. James
Teresa J. James
U.S. Magistrate Judge

---

[19] *Kalb*, 2022 WL 17735542, at *6.